### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### NORTHERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| | ) **00-7072** |
| ANDRX CORPORATION, a Florida corporation, | ) |
| ANDRX PHARMACEUTICALS, INC., a Florida | ) **CIV-FERGUSON** |
| corporation, and ANDRX PHARMACEUTICALS, | ) |
| L.L.C., a Virginia limited liability company, | ) **MAGISTRATE JUDGE** |
| | ) **SNOW** |
| Defendants. | ) |

## COMPLAINT

Plaintiff Abbott Laboratories ("Abbott"), for its complaint against defendants

Andrx Corporation, Andrx Pharmaceuticals, Inc., and Andrx Pharmaceuticals, LLC, alleges as

follows:

## THE PARTIES

1. Abbott is a corporation organized under the laws of the State of Illinois,

having its headquarters and principal place of business at Abbott Park, Illinois 60064.

2. Andrx Corporation is a corporation organized under the laws of the State of

Florida, having its headquarters and principal place of business at 4001 Southwest 47th Avenue,

Fort Lauderdale, FL, 33314.

3. Andrx Pharmaceuticals, Inc. is a corporation organized under the laws of the

State of Florida, having its headquarters and principal place of business at 4001 Southwest 47th

Avenue, Fort Lauderdale, FL, 33314. Andrx Pharmaceuticals, Inc. is a wholly-owned subsidiary

of Andrx Corporation, and is the business segment of Andrx Corporation that is responsible for

CH: 1099459v1



developing bioequivalent versions of selected brand-name pharmaceuticals and then manufacturing and selling those generic products. Andrx Pharmaceuticals, Inc. developed the claimed "Divalproex Sodium Delayed-release Tablets" that are the subject of Abbreviated New Drug Application ("ANDA") No. 75-770 and is the entity that actually filed ANDA No. 75-770 with the FDA.

4.     Andrx Pharmaceuticals, LLC is a limited liability company organized under the laws of the State of Virginia by the Vice President and General Counsel of Andrx Corporation and Andrx Pharmaceuticals, Inc. on or about February 10, 2000, less than three weeks before ANDA No. 75-770 was filed. Andrx Pharmaceuticals, LLC is a wholly owned subsidiary of Andrx Pharmaceuticals, Inc. that purports to have a place of business at 707 East Main Street, 11th Floor, Richmond, VA, 23219, but no such place of business exists at this purported address or anywhere within the State of Virginia.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 and § 1338(a), as it arises under an Act of Congress relating to patents, Title 35, United States Code, §§ 1, et seq.

6.     Venue properly exists in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b).

## FACTUAL BACKGROUND

**A.     Abbott Properly Obtains Patents That Cover DEPAKOTE® (divalproex sodium).**

7.     Abbott has been selling divalproex sodium tablets under the trademark DEPAKOTE® since 1983. DEPAKOTE® (divalproex sodium) is used for the treatment of epileptic seizures or convulsions, bipolar disease and migraine headaches.

8.     Abbott received approval from the United States Food and Drug Administration ("FDA") for its New Drug Application ("NDA") No. 18-723 to market DEPAKOTE® (divalproex sodium) on March 10, 1983.  As a result, DEPAKOTE® (divalproex sodium) is included in the FDA's list of "Approved Drug Products With Therapeutic Equivalence Evaluations," also known as the "Orange Book."  Approved drugs may be used as the basis of a later applicant's Abbreviated New Drug Application ("ANDA") to obtain approval of the ANDA applicant's generic drug product under the provisions of 21 U.S.C. §355(j).

9.     On January 29, 1991, United States Patent No. 4,988,731 ("the '731 patent"), which claims DEPAKOTE® (divalproex sodium), was duly and legally issued.  (A copy of the '731 patent is attached as Exhibit A.)  The '731 patent originated with a patent application filed on August 20, 1979.  The '731 patent remains in full force and effect and will not expire until January 29, 2008.

10.    On May 18, 1993, United States Patent No. 5,212,326 ("the '326 patent"), which also claims DEPAKOTE® (divalproex sodium) was duly and legally issued.  (A copy of the '326 patent is attached as Exhibit B.)  The '326 patent issued as a result of a continuation patent application filed in January 1991, just prior to the issuance of the '731 patent.  The '326 patent remains in full force and effect and will not expire until January 29, 2008.

11.    Abbott is the owner of the '731 and '326 patents.

12.    The '731, '326 and other patents are listed in the "Orange Book" in association with DEPAKOTE® (divalproex sodium).

13.    The claims of the '731 and '326 patents have been judicially interpreted to cover DEPAKOTE® (divalproex sodium).  See Abbott Laboratories v. ALRA Laboratories, Inc., No. 92 C 5806, slip op. (N.D. Ill. Oct. 20, 1997) (Zagel, J.).

**B.    Andrx Corporation and Andrx Pharmaceuticals, Inc. Establish a Sham Company to Pursue Their ANDA for a Generic Version of DEPAKOTE® (divalproex sodium).**

14.    On or about February 10, 2000, Scott Lodin, the Vice President and General Counsel of Andrx Corporation and Andrx Pharmaceuticals, Inc., submitted articles of organization to the State Corporation Commission of the Commonwealth of Virginia (the "Corporation Commission") for a limited liability company named Andrx Pharmaceuticals, LLC.

15.    The Corporation Commission issued a Certificate of Organization for Andrx Pharmaceuticals, LLC on February 11, 2000.

16.    Andrx Pharmaceuticals, LLC is a sham company that is controlled by, and operates as the alter-ego and instrumentality of, Andrx Corporation and Andrx Pharmaceuticals, Inc.. Adherence to the fiction that Andrx Pharmaceuticals, LLC maintains a separate identity from its corporate parents would sanction a fraud and promote injustice. Andrx Corporation and Andrx Pharmaceuticals, Inc. formed this dummy company for the sole purpose of pursuing their ANDA regarding a generic version of Abbott's patented DEPAKOTE® (divalproex sodium).

17.    Upon information and belief, Andrx Pharmaceuticals, LLC has failed to maintain separate corporate formalities with Andrx Corporation and/or Andrx Pharmaceuticals, Inc. and has no means independent of Andrx Corporation and/or Andrx Pharmaceuticals, Inc. to conduct business. Andrx Pharmaceuticals, LLC has no employees, no bank accounts, rents no office space, does not design, manufacture or package any products, and has never earned a cent of revenue.

18.    The purported place of business of Andrx Pharmaceuticals, LLC is 707 East Main Street, 11th Floor, Richmond, Virginia, 23219. Upon information and belief, this address was selected by Andrx Corporation and Andrx Pharmaceuticals, Inc. in an attempt to manufacture jurisdiction over this action in the United States District Court for the Eastern District of Virginia.

- 4 -

19.   Just as Andrx Pharmaceuticals, LLC is a sham company, however, so too is its purported address.  For example,

(a)   There is no telephone listing for Andrx Pharmaceuticals, LLC in Richmond, VA;

(b)   Andrx Pharmaceuticals, LLC is not included in the directory of companies that maintain operations at 707 East Main Street, Richmond, VA, 23219;

(c)   The purported address of Andrx Pharmaceuticals, LLC is in fact the address of the LeClair Ryan law firm, which occupies the entire 11th floor of 707 East Main Street, Richmond, VA, 23219;

(d)   Upon inquiry made of the receptionist for the LeClair Ryan law firm on the 11th floor of 707 East Main Street, Richmond, VA, 23219, Abbott's agent was informed that no company named Andrx Pharmaceuticals, LLC was located at that address; and

(e)   No company named Andrx Pharmaceuticals, LLC has maintained operations at 707 East Main Street, Richmond, VA, 23219 for at least four years -- three years and eleven months longer than Andrx Pharmaceuticals, LLC has been in existence.

**C.   Andrx Pharmaceuticals, LLC Serves Notice on Abbott Regarding the Filing of ANDA No. 75-770.**

20.   On or about March 2, 2000, Abbott received a letter dated March 1, 2000, stating that Andrx Pharmaceuticals, LLC had filed an ANDA, designated as No. 75-770, requesting FDA approval to market "Divalproex Sodium Delayed-release Tablets" in a 500 mg dosage strength before the expiration of the '731 and '326 patents.  Andrx Pharmaceuticals, LLC specifically claims that its proposed "Divalproex Sodium Delayed-release Tablets" is a generic version of Abbott's patented DEPAKOTE[δ] (divalproex sodium) tablets.

21.   On or about June 21, 2000, Abbott received a letter dated June 16, 2000, stating that Andrx Pharmaceuticals, LLC had filed an ANDA, designated as No. 75-770, requesting FDA approval to market "Divalproex Sodium Delayed-release Tablets" in a 250 mg dosage strength before the expiration of the '731 and '326 patents.  Andrx Pharmaceuticals, LLC

specifically claims that its proposed "Divalproex Sodium Delayed-release Tablets" is a generic version of Abbott's patented DEPAKOTE® (divalproex sodium) tablets.

22.    The March 1, 2000 and June 16, 2000 letters state that Andrx Pharmaceuticals, LLC has "a place of business at 707 East Main Street, 11th Floor, Richmond, VA, 23219."

23.    The March 1, 2000 and June 16, 2000 letters were signed on behalf of Andrx Pharmaceuticals, LLC by Ted W. Whitlock ("Whitlock"), who listed his occupation and address as "Intellectual Property Counsel, 707 East Main Street, 11th Floor, Richmond, VA, 23219."

24.    Whitlock is not admitted to practice law in the State of Virginia.  In fact, Whitlock is a member of the bar of the State of Florida, and he is employed as an in-house attorney for Andrx Corporation.

25.    Whitlock sent the notices to Abbott not from Virginia, but from the Florida headquarters of Andrx Corporation and Andrx Pharmaceuticals, Inc..  Indeed, the return address for the notices to Abbott, purportedly being sent by Andrx Pharmaceuticals, LLC, read "Ted Whitlock, Esq., Andrx Corporation, 4001 SW 47th Avenue, Fort Lauderdale, FL,  33314."

26.    Andrx Corporation publicly acknowledged this alter-ego relationship on or about March 3, 2000, when it issued a press release (a copy of which is attached as Exhibit C) announcing that it (not Andrx Pharmaceuticals, LLC) had filed an ANDA, requesting FDA approval to market its claimed generic version of Abbott's patented DEPAKOTE® (divalproex sodium).

## COUNT I

## INFRINGEMENT OF THE '731 PATENT

27.   Abbott repeats and incorporates by reference each and every allegation of paragraphs 1-26 as if fully set forth herein.

28.   Notwithstanding the defendants' assertions to the contrary in the March 1, 2000 and June 16, 2000 letters, defendants' claimed "Divalproex Sodium Delayed-release Tablets" do contain, and are expressly derived from, divalproex sodium -- Abbott's patented product.  Therefore, defendants' claimed "Divalproex Sodium Delayed-release Tablets" fall within the claims of the '731 patent.

29.   Under 35 U.S.C. § 271(e)(2), the submission of an ANDA under 21 U.S.C. § 355(j) for a drug claimed in a patent or for a drug use claimed in a patent is an act of infringement if the applicant seeks FDA marketing approval effective prior to the expiration of the patent.

30.   The defendants' submission of ANDA No. 75-770 for approval to sell "Divalproex Sodium Delayed-release Tablets," a claimed generic version of DEPAKOTE® (divalproex sodium), constitutes an act of infringement of Abbott's '731 patent under 35 U.S.C. § 271(e)(2).

31.   Abbott has no adequate remedy at law to redress the defendants' infringement.

WHEREFORE, Abbott prays for the following relief:

(a)   a judgment that the '731 patent is infringed under 35 U.S.C. § 271(e)(2) by the filing of ANDA No. 75-770;

(b)   an order declaring that ANDA No. 75-770 cannot be approved earlier than the expiration date of Abbott's '731 patent;

(c)   an injunction prohibiting the defendants from commercially manufacturing, selling or using divalproex sodium or otherwise infringing one or more claims of the '731 patent during the life of the patent;

(d)   an award of Abbott's costs and attorneys' fees pursuant to 35 U.S.C. § 271(e)(4) and § 285; and,

(e)   such other and further relief as this Court may deem just and proper.

## COUNT II

## INFRINGEMENT OF THE '326 PATENT

32.   Abbott repeats and incorporates by reference each and every allegation of paragraphs 1-26 as if fully set forth herein.

33.   Notwithstanding the defendants' assertions to the contrary in the March 1, 2000 and June 16, 2000 letters, defendants' claimed "Divalproex Sodium Delayed-release Tablets" do contain, and are expressly derived from, divalproex sodium -- Abbott's patented product.  Therefore, defendants' claimed "Divalproex Sodium Delayed-release Tablets" fall within the claims of the '326 patent.

34.   Under 35 U.S.C. § 271(e)(2), the submission of an ANDA under 21 U.S.C. § 355(j) for a drug claimed in a patent or for a drug use claimed in a patent is an act of

infringement if the applicant seeks FDA marketing approval effective prior to the expiration of the patent.

35.   The defendants' submission of ANDA No. 75-770 for approval to sell "Divalproex Sodium Delayed-release Tablets," a claimed generic version of DEPAKOTE® (divalproex sodium), constitutes an act of infringement of Abbott's '326 patent under 35 U.S.C. § 271(e)(2).

36.   Abbott has no adequate remedy at law to redress the defendants' infringement.

WHEREFORE, Abbott prays for the following relief:

(a)   a judgment that the '326 patent is infringed under 35 U.S.C. § 271(e)(2) by the filing of ANDA No. 75-770;

(b)   an order declaring that the ANDA No. 75-770 cannot be approved earlier than the expiration date of Abbott's '326 patent;

(c)   an injunction prohibiting the defendants from commercially manufacturing, selling or using divalproex sodium or otherwise infringing one or more claims of the '326 patent during the life of the patent;

(d)   an award of Abbott's costs and attorneys' fees pursuant to 35 U.S.C. § 271(e)(4) and § 285; and,

(e)   such other and further relief as this Court may deem just and proper.

A TRIAL BY JURY IS DEMANDED FOR ALL COUNTS.

Dated:  July 28, 2000

ABBOTT LABORATORIES

By:

David C. Goodwin
Fla. Bar No. 030237
John F. O'Sullivan
Fla. Bar No. 143154
AKERMAN, SENTERFITT & EIDSON, P.A.
One Southeast Third Avenue, Suite 2800
Sun Trust International Center
Miami, FL  33131
Telephone: (305) 374-5600
Facsimile:  (305) 374-5095
E-mail: josullivan@akerman.com

OF COUNSEL

Daniel E. Reidy
James R. Daly
Robert C. Micheletto
Jason G. Winchester
JONES, DAY, REAVIS & POGUE
77 West Wacker, Suite 3500
Chicago, Illinois 60601-1692
(312) 782-3939

Laura J. Schumacher
Stacey L. Chronis
ABBOTT LABORATORIES
100 Abbott Park Road
Abbott Park, IL 60064-6034

ATTACHMENT EXHIBIT A

[54] SODIUM HYDROGEN DIVALPROATE OLIGOMER

[75] Inventor: Edwin M. Meade, Duncan, Canada

[73] Assignee: Abbott Laboratories, Abbott Park, Ill.

[21] Appl. No.: 117,945

[22] Filed: Nov. 9, 1987

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 68,284, Aug. 20, 1979, abandoned.

[51] Int. Cl.5 .............. A61K 31/00; C07C 53/128
[52] U.S. Cl. ........................... 514/557; 562/606
[58] Field of Search ............... 562/606; 514/557

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,895,976 | 7/1959 | Kairys et al. | 260/419 |
| 2,915,537 | 12/1959 | Meade | 260/419 |
| 4,127,604 | 11/1978 | Chignac et al. | 562/606 |
| 4,558,070 | 12/1985 | Bauer et al. | 514/557 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1074978 | 10/1954 | France | 562/606 |
| 2442M | 4/1964 | France | 562/606 |

#### OTHER PUBLICATIONS

"The Pharmacological Studies on Sodium Dipropy-lacetate Anticonvulsant Activities and General Pharmalogical Actions", K. Shuto and T. Nishigaki, Applied Pharmacology, 4[6], pp. 937–949 (1970).

Primary Examiner—Vivian Garner
Attorney, Agent, or Firm—Steven F. Weinstock

[57] ABSTRACT

This invention concerns certain diethyl- or dipropyla-cetic acid salts of sodium valproate which have physiological properties similar to those of valproic acid or sodium valproate but show highly superior stability characteristics.

2 Claims, No Drawings

Case 0:00-cv-07052-... Document ... Entered on FLSD Docket 02/11/2000 Page 13 of 21

# SODIUM HYDROGEN DIVALPROATE OLIGOMER

This is a continuation-in-part of copending application Serial No. 68,284, filed Aug. 20, 1979 now abandoned.

This invention relates to salts of valproic acid. In the last decade, 2-propylpentanoic acid and its alkali or earth alkali salts (hereinafter referred to as valproic acid and valproates or valproate salts, respectively) have been introduced in the arsenal of drugs useful for treating epileptic seizures or convulsions. Most commonly used are valproic acid itself or its sodium salt. The former is a liquid and as such is less desirable for preparing an oral dosage form while the latter is a solid that has poor stability characteristics partially due to pronounced hygroscopicity.

It has now been found that a highly stable, nonhygroscopic, solid entity can be prepared from valproic acid and its salts, representing a single chemical molecule with well-defined physical characteristics.

The new compound represents a single crystalline entity consisting of one molecule each of valproic acid or diethylacetic and a sodium valproate salt. There has been some uncertainty as to the structure of the compound. It was first hypothesized that the compound formed a complex in the form of a compound thus:

CH₃(CH₂)₂
CH—C O — MO CH₃—CH₂—CH (I)
CH₃(CH₂)₂ OH—C C CH₃—CH₂—CH₃

where M represented Na and n is 1 or 2.

Subsequent investigations have confirmed that the compound consists of one molecule each of valproic acid or diethylacetic acid and sodium valproate. However, it has been found that the molecules are distributed as an ionic oligomer, rather than as a dimer as originally believed. Thus, the sodium salt may be illustrated:

CH₃CH₂CH₂ CH₂CH₂CH₃ CH₃CH₂CH₂ CH₂CH₂CH₃ (II)
H O C O C O O C
Na⁺ Na⁺ O H O
CH₃CH₂CH₂ CH₂CH₂CH₃ CH₃CH₂CH₃ CH₂CH₂CH₃ ₘ

wherein m is about 2.

As can be seen from the foregoing structure, one mole each of the valproic acid moieties form coordinate bonds with the sodium of the sodium valproate molecule, and the valproate ion is ionically bonded to the sodium atom. The structure is thus consistent with the unique characteristics of the compound.

In the simplest embodiment, the above compound is prepared by dissolving one mole each of [Me(CH₂)₂-]₂—CHCOOH and sodium valproate in 1000 ml of acetone at about 50° C. After cooling the solution to 0° C. or below, the formed new compound is filtered, washed if desired with pre-cooled acetone, and dried under reduced pressure to remove all traces of acetone. Alter-

nately, the new compound wherein n = 2 can be made in acetone. In this instance, sodium valproate is formed in situ by adding NaOH at a level of one half of a molecular equivalent of the valproic acid present, preferably as a solution in an acetone-miscible solvent for said NaOH, e.g. water. The new compound can be recovered from the liquid phase by evaporating the solvent(s) and, if desired, the new compound can be recrystallized, for instance from acetone/water, from acetonitrile or others, or the material may be spray-dried, lyophilized or purified by chromatography.

The new compound represents a single chemical molecule as can be determined by microanalysis, nmr spectrum, mixed melting point determination, IR spectrum and/or X-ray diffraction. The new compound does not have the aforementioned detrimental physical characteristics of either of the two starting materials; it is a crystalline, stable solid. Surprisingly, such a useful compound can be made only from valproic acid and diethylacetic acid on one side of the molecule, with the sodium or salt of valproic acid. When other valproate salts are used, i.e., the potassium, ammonium or magnesium salts, the resulting compound, either does not crystallize, does not form or is highly unstable in the presence of any atmospheric moisture.

The process for making the compounds of this invention are best illustrated by reference to the following examples which, however, are not intended to limit the invention in any respect.

## EXAMPLE 1

In 1000 ml of acetone at about 50° C. is dissolved 166 g of sodium valproate and 144 g of valproic acid. The solution is cooled to about 0° C., filtered and the crystalline precipitate is washed with pre-cooled acetone at about 0° C. The new compound is obtained in a yield of 90% of theory. Additional material can be obtained by using the acetone filtrate in a subsequent batch.

The new material is a stable, white, crystalline powder which melts at 98–100° C. Its moisture stability is established by placing samples of the material for 45 minutes in a controlled environment at room temperature and 80% relative humidity. No weight gain is observed, while under the same condition, the simple sodium salt of valproic acid gains between 17 and 24% in weight.

The infrared spectrum is consistent with proposed structure II and has the following characterizing absorption bands: strong bands at 2957, 2872, 2932, 1685, 1555 and 1370 cm⁻¹. The first two of these indicate the various methyl groups, the last two are due respectively to the antisymmetric and symmetric O—C—O—stretching vibrations of the carboxyl salt. The remaining

... the stretching vibrations of the ... groups and the $C=O$ of the carboxylic acid group, while the weak, broad bands at 2450 and 1900 cm$^{-1}$ are due to intramolecularly bounded OH groups of the carboxylic acid.

## EXAMPLE 2

In the fashion of Example 1 but using sodium valproate with the molar equivalents of dibutylacetic acid or diethylacetic acid, respectively, the corresponding hydrogen sodium mixed salts of the assumed structure II with a=b 3 or 1, respectively, are obtained. In the instance of dibutylacetic acid, a very hygroscopic product is obtained which is very difficult to handle and therefore unsuitable for pharmaceutical dosage forms. The mixed salt obtained with diethylacetic acid is a white crystalline powder which is stable to ordinary storage conditions and essentially nonhygroscopic.

## EXAMPLE 3

In a comparison of anticonvulsant activities of
A: valproic acid (stable, liquid)
B: sodium valproate (hygroscopic solid)
C: compound (stable solid) of Example 1
the oral ED50 based on equimolar valproic acid equivalents are established by standard procedures. The results are as follows:

|  | A | B | C |
|---|---|---|---|
| Audiogenic seizures (mice) | 154 | 141 | 81 mg/kg |
| Pentylenetetrazole seizures (mice) | <800 | 282 | 176 mg/kg |
| Pentylenetetrazole seizures (rats) | 355 | 415 | 362 mg/kg |

In a bioavailability study carried out with (A) and (C) above in various animal species, the peak blood plasma levels of oral, equimolar doses are determined according to standard procedures, 30 minutes after drug administration.

|  | A | C |
|---|---|---|
| Mouse (200 mg/kg) | 133.7 | 207.4 mg/kg |
| Rat (200 mg/kg) | 54.1 | 63.0 mg/kg |
| Dog (25 mg/kg) | 65.2 | 73.6 mg/kg |
| Dog (25 mg/kg) AUC* | 72.3 | 95.0 hr·mcg/ml |

*Area under the curve value for 6-7 hours.

From the above examples, it will be seen that the new material has equal or better physiological properties than either valproic acid or sodium valproate. Since the new compound has far superior physical characteristics than either "monomer" from which it is made, it greatly facilitates the preparation of solid pharmaceutical dosage forms, and specific amounts can be weighed out and blended with starch and/or other binders to form a flowable powder which can be forwarded to standard tableting machines after granulation. Neither the hygroscopic sodium salt of valproic acid nor the liquid valproic acid itself can be processed in this fashion without special precautions or absorbents.

The new compounds can be tableted in accordance with Example XIII of U.S. Pat. No. 3,325,361 and analogous methods. In these procedures, one or more diluents and/or excipients are used, e.g., starch, talcum powder, lubricants, disintegrators, flavoring agents, coloring agents and the like. These additives, of course, are the usual pharmaceutically acceptable carriers or diluents employed in routine fashion by tablet formulators.

The above structure II is the most likely true two-dimensional view of the sodium/hydrogen divalproate and seems to be confirmed by IR and nmr spectra, by molecular weight and microanalytic values. Thus, the new material should be characterized not by depicting a structural formula but by reference to a single compound of formula $(CH_3CH_2CH_2)_2CHCO_2Na/R_2CHCO_2H$ or $[(R_2CHCO_2)(R_2CHCO_2)]Na_xH$ wherein each R is propyl, or by reference to sodium/hydrogen divalproate.

It will be understood that various changes and modifications can be made in the details of procedure, formulation and use without departing from the spirit of the invention, especially as defined in the following claims.

I claim:

1. An oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 4 such units.

2. An oral pharmaceutical dosage form for treating the symptoms of epileptic seizures or convulsions, containing as the active principal an oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 4 such units.

* * * * *



Case 0:00-cv-06002-WJH   Document   Entered on FLSD Docket 07/21/2000   Page 16 of 21

US005212326A

## United States Patent [19]

**Meade**

[11] Patent Number: **5,212,326**

[45] Date of Patent: * **May 18, 1993**

[54] **SODIUM HYDROGEN DIVALPROATE OLIGOMER**

[75] Inventor: **Edwin M. Meade**, Duncan, Canada

[73] Assignee: **Abbott Laboratories**, Abbott Park, Ill.

[ * ] Notice: The portion of the term of this patent subsequent to Jan. 29, 2008 has been disclaimed.

[21] Appl. No.: **637,828**

[22] Filed: **Jan. 7, 1991**

### Related U.S. Application Data

[63] Continuation of Ser. No. 117,945, Nov. 9, 1987, Pat. No. 4,988,731, which is a continuation of Ser. No. 545,719, Oct. 26, 1983, abandoned, which is a continuation-in-part of Ser. No. 68,284, Aug. 20, 1979, abandoned.

[51] Int. Cl.5 .................... C07B 53/00; A01N 37/00; A61K 31/19

[52] U.S. Cl. .................................................. 562/606

[58] Field of Search .................... 562/606; 514/557

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,127,604 | 11/1978 | Chignac et al. | 562/606 |
| 4,558,070 | 12/1985 | Bauer et al. | 562/606 X |
| 4,988,731 | 1/1991 | Meade | 562/606 X |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1074978 | 10/1954 | France | 562/606 |
| 2442M | 4/1964 | France | 562/606 |

Primary Examiner—José G. Dees
Assistant Examiner—Joseph M. Conrad
Attorney, Agent, or Firm—Steven F. Weinstock

[57] **ABSTRACT**

This invention concerns certain diethyl- or dipropylacetic acid salts of sodium valproate which have physiological properties similar to those of valproic acid or sodium valproate but show highly superior stability characteristics.

**5 Claims, No Drawings**

# SODIUM HYDROGEN DIVALPROATE OLIGOMER

This application is a continuation of Ser. No. 117,945, filed Nov. 9, 1987, now U.S. Pat. No. 4,988,731 issued Jan. 29, 1991, which is a continuation of Ser. No. 545,719 filed Oct. 26, 1983, now abandoned, which is a continuation-in-part of Ser. No. 068,284 filed Aug. 20, 1979, now abandoned.

This invention relates to salts of valproic acid. In the last decade, 2-propylpentanoic acid and its alkali or earth alkali salts (hereinafter referred to as valproic acid and valproates or valproate salts, respectively) have been introduced in the arsenal of drugs useful for treating epileptic seizures or convulsions. Most commonly used are valproic acid itself or its sodium salt. The former is a liquid and as such is less desirable for preparing an oral dosage from while the latter is a solid that has poor stability characteristics partially due to pronounced hygroscopicity.

It has now been found that a highly stable, nonhygroscopic, solid entity can be prepared from valproic acid and its salts, representing a single chemical molecule with welldefined physical characteristics.

The new compound represents a single crystalline entity consisting of one molecule each of valproic acid or diethylacetic and a sodium valproate salt. There has been some uncertainty as to the structure of the compound. It was first hypothesized that the compound formed a complex in the form of a compound thus:

$$CH_3(CH_2)_2 \quad \quad \quad \quad CH_2-CH_2-CH_3 \quad (I)$$
$$CH-C \cdots \cdots NO \quad \quad \quad C=O \cdots NO$$
$$CH_3(CH_2)_2 \quad OH \cdots NO \quad \quad CH_2-CH_2-CH_3$$

where M represented Na and n is 1 or 2.

Subsequent investigations have confirmed that the compound consists of one molecule each of valproic acid or diethylacetic acid and sodium valproate. However, it has been found that the molecules are distributed as an ionic oligomer, rather than as a dimer as originally believed. Thus, the sodium salt may be illustrated:

$$CH_3CH_2CH_3 \quad \quad CH_2CH_2CH_3 \quad CH_3CH_2CH_3 \quad \quad CH_2CH_2CH_3$$

wherein m is about 2 to 3.

As can be seen from the foregoing structure, one mole each of the valproic acid moiety form coordinate bonds with the sodium of the sodium valproate molecule, and the valproate ion is ionically bonded to the sodium atom. The structure is thus consistent with the unique characteristics of the compound.

In the simplest embodiment, the above compound is prepared by dissolving one mole each of [Me(CH$_2$)$_2$]$_2$-CHCOOH and sodium valproate in 1000 ml of acetone at about 50° C. After cooling the solution to 0° C. or below, the formed new compound is filtered, washed if

duced pressure to remove all traces of acetone. Alternately, the new compound wherein n=2 can be made in a two-component liquid medium which includes acetone. In this instance, sodium valproate is formed in situ by adding NaOH at a level of one half of a molecular equivalent of the valproic acid present, preferably as a solution in an acetone-miscible solvent for said NaOH, e.g. water. The new compound can be recovered from the liquid phase by evaporating the solvent(s) and, if desired, the new compound can be recrystallized, for instance from acetone/water, from acetonitrile or others, or the material may be spray-dried, lyophilized or purified by chromatography.

The new compound represents a single chemical molecule as can be determined by microanalysis, nmr spectrum, mixed melting point determination, IR spectrum and/or X-ray diffraction. The new compound does not have the aforementioned detrimental physical characteristics of either of the two starting materials; it is a crystalline, stable solid. Surprisingly, such a useful compound can be made only from valproic acid and diethylacetic acid on one side of the molecule, with the sodium or salt of valproic acid. When other valproate salts are used, i.e., the potassium, ammonium or magnesium salts, the resulting compound, either does not crystallize, does not form or is highly unstable in the presence of any atmospheric moisture.

The process for making the compounds of this invention are best illustrated by reference to the following examples which, however, are not intended to limit the invention in any respect.

## EXAMPLE 1

In 1000 ml of acetone at about 50° C. is dissolved 166 g of sodium valproate and 144 g of valproic acid. The solution is cooled to about 0° C., filtered and the crystalline precipitate is washed with pre-cooled acetone at about 0° C. The new compound is obtained in a yield of 90% of theory. Additional material can be obtained by using the acetone filtrate in a subsequent batch.

The new material is a stable, white, crystalline powder which melts at 98°-100° C. Its moisture stability is established by placing samples of the material for 45 minutes in a controlled environment at room temperature and 80% relative humidity. No weight gain is observed, while under the same condition, the simple sodium salt of valproic acid gains between 17 and 24% in weight.

The infrared spectrum is consistent with proposed structure II and has the following characterizing absorption bands: strong bands at 2957, 2872, 2932, 1685, 1555 and 1370 cm$^{-1}$. The first two of these indicate the various methyl groups, the last two are due respectively to the antisymmetric and symmetric O-C-O-stretching vibrations of the carboxyl salt. The remaining strong bands indicate the stretching vibrations of the various methylene groups and the C=O in the carboxylic acid group, while the weak, broad bands at 2450 and 1900 cm$^{-1}$ are due to intramolecularly bounded OH groups of the carboxylic acid.

## EXAMPLE 2

In a comparison of anticonvulsant activities of
A: valproic acid (stable, liquid)
B: sodium valproate (hygroscopic solid)
C: compound (stable solid) of Example 1

Case 0:00-cv-07072-SH   Document 1   Entered on FLSD Docket 07/31/2000   Page 17 of 21

Case 0:00-cv-06002-PAS Document 1 Entered on FLSD Docket 07/31/2000 Page 18 of 21

3

4

lents are established by standard procedures. The results are as follows.

| | A | B | C |
|---|---|---|---|
| Audiogenic seizures (mice) | 154 | 141 | 81 mg/kg |
| Pentylenetetrazole seizures (mice) | <800 | 282 | 178 mg/kg |
| Pentylenetetrazole seizures (rats) | 355 | 415 | 342 mg/kg |

In a bioavailability study carried out with (A) and (C) above in various animal species, the peak blood plasma levels of oral, equimolar doses are determined according to standard procedures, 30 minutes after drug administration.

| | A | C |
|---|---|---|
| Mouse (300 mg/kg) | 131.7 | 207.4 mg/kg |
| Rat (200 mg/kg) | 84.1 | 63.0 mg/kg |
| Dog (25 mg/kg) | 65.2 | 73.6 mg/kg |
| Dog (25 mg/kg) AUC* | 82.3 | 95.0 hr · mcg/ml |

*Area under the curve values for 0-3 hours.

From the above examples, it will be seen that the new material has equal or better physiological properties than either valproic acid or sodium valproate. Since the new compound has far superior physical characteristics than either "monomer" from which it is made, it greatly facilitates the preparation of solid pharmaceutical dosage forms, and specific amounts can be weighed out and blended with starch and/or other binders to form a flowable powder which can be forwarded to standard tableting machines after granulation. Neither the hygroscopic sodium salt of valproic acid nor the liquid valproic acid itself can be processed in this fashion without special precautions or absorbents.

The new compounds can be tableted in accordance with Example XIII of U.S. Pat. No. 3,325,361 and analogous methods. In these procedures, one or more diluents and/or excipients are used, e.g., starch, talcum powder, lubricants, disintegrators, flavoring agents, coloring agents and the like. These additives, of course, are the usual pharmaceutically acceptable carriers or diluents employed in routine fashion by tablet formulators.

mensional view of the sodium/hydrogen divalproate and seems to be confirmed by IR and nmr spectra, by molecular weight and microanalytic values. Thus, the new material should be characterized not by depicting a structural formula but by reference to a single compound of formula $(CH_3CH_2CH_2)_2CHCO_2Na/R_2CH\text{-}CO_2H$ or $[(R_2CHCO_2)(R_2CHCO_2)]Na_2H$ wherein each R is propyl, or by reference to sodium/hydrogen divalproate.

It will be understood that various changes and modifications can be made in the details of procedure, formulation and use without departing from the spirit of the invention, especially as defined in the following claims.

I claim:

1. An oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 4 to 6 such units.

2. An oral pharmaceutical dosage form for treating the symptoms of epileptic seizures or convulsions, containing as the active principal an oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2\text{-}Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 4 to 6 such units.

3. An oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 6 such units.

4. An oral pharmaceutical dosage form for treating the symptoms of epileptic seizures or convulsions, containing as the active principal an oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2\text{-}Na/(CH_3CH_2CH_2)_2CHCO_2H$, and containing about 6 such units.

5. An oligomer having a 1:1 molar ratio of sodium valproate and valproic acid of the unit formula, $(CH_3CH_2CH_2)_2CHCO_2Na/(CH_3CH_2CH_2)_2CHCO_2H$, and having physical/chemical properties as follows:
a. stable, white crystalline powder;
b. melting point of 98°–100° C.; and
c. an infrared spectrum having strong absorption bands at about 2957, 2872, 2932, 1685, 1555 and 1370 cm$^{-1}$.

* * * * *

50

55

60

65

ATTACHMENT / EXHIBIT

# ( BW)(FL-ANDRX)(ADRX) Andrx Files ANDA for Depakote

Business Editors

FORT LAUDERDALE, Fla.-- (BUSINESS WIRE)--March 3, 2000--ANDRX
CORPORATION (Nasdaq:ADRX) today announced that the United States Food
and Drug Administration (FDA) has accepted its Abbreviated New Drug
Application (ANDA) submission for a bioequivalent version of
Depakote(R). Marketed by Abbott Laboratories, Inc. for the treatment
of epilepsy, Depakote(R) reported 1999 sales in the U.S. of nearly
$700 million.

Andrx believes that its formulation filed under Paragraph IV of
the Hatch-Waxman Amendments does not infringe the patents that have
been listed in the FDA's Orange Book as covering this product.

Alan P. Cohen, Co-Chairman and Chief Executive Officer of Andrx,
said, "This is the eighth ANDA that Andrx now has on file with the FDA
to bring our bioequivalent products to market. The brand versions of
these products had approximately $6 billion in 1999 U.S. sales."

Andrx is engaged in the formulation and commercialization of oral
controlled-release pharmaceuticals utilizing its proprietary drug
delivery technologies. In its ANDA program, the Company is developing
generic versions of selected high sales volume controlled-release
brand name pharmaceuticals. In its NDA program, the Company is
developing its own brand name formulations of certain existing drugs
that it believes may be improved by the application of the Company's
drug delivery technologies. The Company also markets and distributes
pharmaceutical products manufactured by third parties and, through its
Cybear, Inc. subsidiary (NASDAQ: CYBA), is developing internet-based
software and applications for the healthcare industry.

Forward-looking statements (statements which are not historical
facts) in this release are made pursuant to the safe harbor provisions
of the Private Securities Litigation Reform Act of 1995. For this
purpose, any statements contained in this report that are not
statements of historical fact may be deemed to be forward-looking
statements. Without limiting the generality of the foregoing, words
such as "may", "will", "expect", "believe", "anticipate", "intend",
"could", "would", "estimate", or "continue" or the negative other
variations thereof or comparable terminology are intended to identify
forward-looking statements. Investors are cautioned that all
forward-looking statements involve risks and uncertainties, including
those risks and uncertainties detailed in the Company's filings with
the Securities and Exchange Commission.

--30--nmb/mi*

CONTACT: Andrx Corporation, Fort Lauderdale
         Elliot F. Hahn, Ph.D., President, 954/584-0300
         http://www.Andrx.com.

KEYWORD: FLORIDA
INDUSTRY KEYWORD:  PHARMACEUTICAL PRODUCT

CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

**00-7072**

**CIV-FERGUSON**

## I(a) PLAINTIFFS

ABBOTT LABORATORIES

## DEFENDANTS

ANDRX CORPORATION, ANDRX PHARMACEUTICALS, INC., and ANDRX PHARMACEUTICALS, L.L.C.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

LAKE COUNTY
STATE OF ILLINOIS

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
STATE OF FLORIDA

**MAGISTRATE JUDGE**
**SNOW**

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John F. O'Sullivan, Esquire
AKERMAN, SENTERFITT & EIDSON
1 S.E. 3rd Ave, 28th floor, Miami, FL 33131
(305) 374-5600

ATTORNEYS (IF KNOWN)

At Lauderdale 00cv 7072 FERGUSON/SNOW

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION

(PLACE AN X ONE BOX ONLY)

□ 1. U.S. Government Plaintiff
X 3. Federal Question (U.S. Government Not a Party)
□ 2. U.S. Government Defendant
□ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES

(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

(For Diversity Case Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated and Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CAUSE OF ACTION

(CITE THE U.S. STATUTE WHICH UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Suit for patent infringement, 35 U.S.C. §1, et. seq.

**Iva.** __15__ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT

(PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|
| □ 110 Insurance | **PERSONAL INJURY** | □ 610 Agriculture | □ 422 Appeal 28 USC 158 | □ 400 State Reapportionment |
| □ 120 Marine | □ 310 Airplane | □ 620 Other Food & Drug | □ 423 withdrawal 28 USC 157 | □ 410 Antitrust |
| □ 130 Miller Act | □ 315 Airplane Product Liability | □ 625 Drug Related Seizure of Property 21 USC 881 | | □ 430 Banks and Banking |
| □ 140 Negotiable Instrument | □ 320 Assault, Libel & Slander | □ 630 Liquor Laws | **A PROPERTY RIGHTS** | □ 450 Commerce/ICC Rates/etc B |
| □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 330 Federal Employers' Liability | □ 640 R.R. & Truck | □ 820 Copyrights | □ 460 Deportation |
| □ 151 Medicare Act | □ 340 Marine | □ 650 Airline Regs | X 830 Patent | □ 470 Racketeer Influenced and Corrupt Organizations |
| □ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | □ 345 Marine Product Liability | □ 660 Occupational Safety/Health | □ 840 Trademark | □ 810 Selective Service |
| □ 153 Recovery of Overpayment of Veterans Benefits B | □ 350 Motor Vehicle | □ 690 Other | | □ 850 Securities/Commodities/Exchange |
| □ 160 Stockholders' Suits | □ 355 Motor Vehicle Product Liability | | **B SOCIAL SECURITY** | □ 875 Customer Challenge 12 USC 3410 |
| □ 190 Other Contract | □ 360 Other Personal Injury | **A LABOR** | □ 861 HIA (1395f) | □ 891 Agricultural Acts |
| □ 195 Contract Product Liability | | □ 710 Fair Labor Standards Act | □ 862 Black Lung (923) | □ 892 Economic Stabilization Act |
| | **A PERSONAL PROPERTY** | □ 720 Labor Management Relations B | □ 863 DIWC/DIWW (405(g)) | □ 893 Environmental Matters |
| | □ 370 Other Fraud | □ 730 Labor Management Reporting & Disclosure Act | □ 864 SSID Title XVI | □ 894 Energy Allocation Act |
| | □ 371 Truth in Lending B | □ 740 Railway Labor Act | □ 865 RSI (405(g)) | □ 895 Freedom of Information Act |
| | □ 380 Other Personal Property Damage | □ 790 Other Labor Litigation | | □ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | □ 385 Property Damage Product Liability | □ 791 Employee Ret Inc Security Act B | **A FEDERAL TAX SUITS** | □ 950 Constitutionality of State Statutes |
| | **B PERSONAL INJURY** | | □ 870 Taxes (U S Plaintiff or Defendant) | □ 890 Other Statutory Actions* |
| | □ 362 Personal Injury-Med Malpractice | | □ 871 IRS-Third Party 26 USC 7609 | * A or B |
| | □ 365 Personal Injury-Product Liability | | | |
| | □ 368 Asbestos Personal Injury Product Liability | | | |

| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS |
|---|---|---|
| □ 210 Land Condemnation | □ 441 Voting | □ 510 Motions to Vacate Sentence Habeas Corpus |
| □ 220 Foreclosure | □ 442 Employment | □ 530 General |
| □ 230 Rent Lease & Ejectment | □ 443 Housing/Accommodations | □ 535 Death Penalty |
| □ 240 Torts to Land | □ 444 Welfare | □ 540 Mandamus and Other* |
| □ 245 Tort Product Liability | □ 440 Other Civil Rights | □ 550 Civil Rights |
| □ 290 All Other Real Property | | * A or B |

## VI. ORIGIN

(PLACE AN X IN ONE BOX ONLY)

X Original Proceeding
□ Removed from State Court
□ Remanded from Appellate Court
□ Refiled
□ Transferred from another district (specify)
□ 6. Multidistrict Litigation
□ Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A □ UNDER F.R.C.P. 23

CLASS ACTION

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES □ NO

## VIII. RELATED CASE(S) IF ANY

(See Instructions
00-6520 CIV-HIGHSMITH

JUDGE SHELBY HIGHSMITH

MAGISTRATE JUDGE GARBER

DATE July 28, 2000

SIGNATURE OF ATTORNEY OF RECORD John F O'Sullivan, Esquire